UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ZAK FRANKLIN HAY,

            Plaintiff,

    v.

ANDREW SAUL, Commissioner of Social Security,

            Defendant.

No. 2:18-cv-1706-EFB

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties have filed cross-motions for summary judgment. ECF Nos. 13 & 19. For the reasons discussed below, plaintiff's motion for summary judgment is granted, the Commissioner's cross-motion for summary judgment is denied, and the matter is remanded for further proceedings consistent with this order.

I.    Background

In 2012, plaintiff filed an application for a period of disability and DIB, alleging that he has been disabled since November 7, 2007. Administrative Record ("AR") 266-272. His application was denied initially and upon reconsideration. *Id.* at 171-174, 178-183. After holding a hearing, administrative law judge Peter F. Belli ("ALJ Belli") issued a decision finding that

/////

1

plaintiff was not disabled under section 216(i) and 223(d) of the Act.[1]  *Id*. at 151-160.  The

Appeals Council subsequently granted plaintiff's request for review, vacated the ALJ's decision,

and remanded the matter to the ALJ for further consideration of plaintiff's claim.  *Id*. at 166-169.

Another hearing was held before ALJ Belli, at which plaintiff and a vocational expert

testified.  *Id*. at 29-49.  ALJ Belli issued a new decision on January 7, 2015, again finding that

plaintiff was not disabled under the Act.  *Id*. at 10-22.  The Appeals Council subsequently denied

plaintiff's request for review, leaving ALJ Belli's January 7, 2015 decision as the final decision of

the Commissioner.  *Id*. at 1-4.

/////

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*.  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq*.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

Plaintiff sought judicial review in this court, and on March 30, 2017, the court remanded the case for further administrative proceedings.[2]  *Id*. at 1509-16.  On remand, another administrative hearing was held, this time before administrative law judge Christopher Knowdell (the "ALJ").  *Id*. at 1421-64.  On April 5, 2018, the ALJ issued a decision finding that plaintiff was not disabled under section 216(i) and 223(d) of the Act.  *Id*. at 1387-1412.  The ALJ made the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant engaged in substantial gainful activity during the period from his alleged onset date of November 7, 2007 through May 28, 2010.  While there was self-employment income as medical skills teacher from October 2010 through December 2011, the undersigned finds this activity was not substantial nor gainful.  Thereafter, through his date last insured of December 31, 2016 the claimant has not engaged in substantial gainful activity (20 CFR 404.1571 *et seq*.).

   * * *

3. Through the date last insured, the claimant had the following severe impairments: residuals status post traumatic brain injury (11/2007); migraines; left arm/hand neuropathy; residuals, including acute osteomyelitis left ankle and foot, post multiple surgeries; chronic pain due to trauma; degenerative disk disease of the lumbar spine status post compression and transverse process fractures; hearing loss; PTSD; major depressive disorder; anxiety disorder (20 CFR 404.1520(c)).

   * * *

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

   * * *

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light/sedentary work as defined in 20 CFR 404.1567(b) in that he can lift and carry twenty pounds occasionally and ten pounds frequently, sit for six hours of an eight hour day, stand and walk for two hours of an eight hour day, except he can only occasionally perform left foot controls, and can do so frequently on the right; cannot climb ladders,

---

[2]  In the first action, plaintiff's motion for summary judgment requested that the case be remanded for immediate payment of benefits.  The Commissioner conceded that ALJ Belli committed reversal error in his January 7, 2015 decision, but argued that the case should be remanded for further administrative proceedings, not payment of benefits.  *See* AR 1509-16.

ropes and scaffolds, kneel crouch or crawl; can occasionally climb stairs/ramps, balance and stoop; and cannot work about [sic] hazards (dangerous machinery, unprotected heights etc.).  He can sustain no concentrated exposure to noise above a moderate (office) level.  He is capable of simply routine tasks and occasionally detailed tasks.  He can occasionally interact with the public; can frequently interact with coworkers and supervisors; and can occasionally adjust to workplace changes.

\* \* \*

6.  Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

\* \* \*

7.  The claimant was born [in] 1974 and was 42 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

\* \* \*

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from November 7, 2007, the alleged onset date, through December 31, 2016, the date last insured (20 CFR 404.1520(g)).

*Id.* at 1389-1412.

/////

/////

/////

/////

/////

/////

4

Plaintiff did not file written exceptions to the ALJ's decision, and the Appeals Council did not exercise its discretion to assume jurisdiction.[3]  Accordingly, the ALJ's April 10, 2018 decision is the final decision of the Commissioner.  20 C.F.R. § 404.984(a).

II.    Legal Standards

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied.  *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

/////

/////

/////

---

[3]  Once an ALJ issues a decision after remand from the district court, the plaintiff has 30 days to file exceptions with the Appeals Council, requesting the Appeals Council review the ALJ's decision.  20 C.F.R. § 404.984(b).  Even where the plaintiff declines to file exceptions, the Appeals Council may, within 60 days of the decision, *sua sponte*, assume jurisdiction of the case.  20 C.F.R. § 416.1484(b).  "If no exceptions are filed and the Appeals Council does not assume jurisdiction of [the] case, the decision of the administrative law judge becomes the final decision of the Commissioner after remand."  20 C.F.R. § 416.1484(d).

1    III.    Analysis

2         Plaintiff argues that the ALJ committed five principal errors.  First, he argues that the ALJ

3    erred in finding plaintiff performed substantial gainful activity from November 7, 2007 through

4    May 28, 2010.  Second, plaintiff argues that the ALJ erred by failing to find that his attention

5    deficit disorder and knee pain were severe impairments at step-two.  Third, plaintiff claims the

6    ALJ improperly weighed the medical opinion evidence.  Fourth, he contends the ALJ failed to

7    provide a legally sufficient reason for disregarding the disability rating from the Veterans Affairs.

8    Fifth, plaintiff contends the ALJ improperly rejected his subjective complaints absent clear and

9    convincing reasons.  ECF No. 13 at 21-38.  For the reasons explained below, the court finds

10   plaintiff's first and fifth arguments persuasive.

11        A.    Step-One

12        Plaintiff argues that the ALJ erred at step-one of the sequential evaluation by finding that

13   he engaged in substantial gainful activity from November 7, 2007 through May 28, 2010.  More

14   specifically, he contends that the ALJ failed to properly evaluate his work activity during this

15   period under the requirements of Social Security Ruling ("SSR") 84-24.  *Id*. at 21-23.

16        As the threshold matter, the parties dispute whether any error in evaluating plaintiff's

17   military work activity—which occurred prior to plaintiff's medical retirement in May 2010—was,

18   at most, harmless.  The Commissioner notes that even if plaintiff was disabled, he could only

19   receive benefits for the 12 months prior to the date he filed his application.  ECF No. 19 at 7; *see*

20   20 C.F.R. § 404.621(a) (a disabled individual "may receive benefits for up to 12 months

21   immediately before the month in which [the DIB] application is filed.").  The Commissioner

22   contends that since plaintiff did not file his application until April 2012, any error in evaluating

23   plaintiff's work prior to May 2010 was, at most, harmless.  ECF No. 19 at 7.  Plaintiff counters

24   that the error was not harmless because the ALJ's decision reflects a de facto reopening of a prior

25   DIB application he filed in February 2008.  ECF No. 13 at 10 n.2; ECF No. 22 at 5.  He further

26   notes that each of the three pre-hearing briefs he submitted requested his prior application be

27   reopened.  ECF No. 13 at 10 n.2; *see* AR 390 (requesting prior application be reopened), 401

28   (same), 1712 (same).

1    In *Lewis v. Apfel*, the U.S. Court of Appeals for the Ninth Circuit held that when an ALJ is

2   aware of the denial of a prior application, accepts without comment an alleged onset date falling

3   within the previously adjudicated period, and then considers evidence of disability related to that

4   period, the ALJ's actions are to be treated as a de facto reopening of the prior application.  236

5   F.3d 503, 510 (9th Cir. 2001); *see also Lester v. Charter*, 81 F.3d 821, 824 n.3 (9th Cir. 1996)

6   ("There is an exception to the general rule that courts may not review the Commissioner's

7   decision not to reopen, where the Commissioner considers 'on the merits' the issue of the

8   claimant's disability during the already adjudicated period.").

9    Here, the ALJ's decision acknowledged plaintiff's prior application was denied at the

10   initial level in May 2008 due to insufficient evidence.  AR 1390.  His decision, however, did not

11   squarely address plaintiff's requests to reopen that application.  The ALJ did find that "based on

12   the present application filing date, April 23, 2012, [plaintiff] cannot be awarded any disability for

13   this period (November 2007 through May 28, 2010) anyway." *Id*.  Although this statement seems

14   to imply a denial of plaintiff's request, the ALJ did not specifically state that he was denying the

15   request.

16    Regardless, the ALJ specifically evaluated evidence from the previously adjudicated

17   period.  For instance, the ALJ considered plaintiff's earning records from 2007 through 2011, and

18   specifically found that plaintiff had engaged in substantial gainful activity from November 2007

19   through May 2010, but not thereafter.  AR 1389-90.  More significantly, the ALJ ultimately

20   concluded that plaintiff was not disabled "at any time from November 7, 2007, the alleged onset

21   date, through" the date last insured. *Id*. at 1412.  Thus, the ALJ did in fact considered the merits

22   of plaintiff's claim that he was disabled as of November 7, 2007, which included a period already

23   adjudicated by the denial of the February 2008 application.  Accordingly, the ALJ de facto

24   reopened plaintiff's 2008 application.  Based on that application, a favorable decision would

25   entitle plaintiff to benefits as of November 7, 2007, the alleged disability onset date.

26    The court also agrees with plaintiff that the ALJ failed to apply the properly legal

27   standards in finding that plaintiff's military work activity constituted substantial gainful activity.

28   /////

1   Substantial gainful activity is "work activity that involves doing significant physical or mental

2   activities" on a full or part-time basis, and that is the "kind of work usually done for pay or profit,

3   whether or not a profit is realized."  20 C.F.R. §§ 404.1572 (a), (b).  Generally, the earnings

4   received for work activity are the primary consideration in assessing whether work activity was

5   substantial and gainful.  20 C.F.R. § 404.1574; *see also Lewis v. Apfel*, 236 F.3d 503, 515 (9th

6   Cir. 2001) ("Earnings can be presumptive, but not conclusive, sign of whether a job is substantial

7   gainful activity.").

8           However, earnings from military service do not carry the same weight where the claimant

9   is being treated for a severe impairment.  Social Security Ruling ("SSR") 84-24.  This is because

10   severely impaired service members "may be on limited duty status and working in a therapy

11   program while receiving full pay."  *Id*.  Accordingly, in these type of cases an ALJ is required to

12   compare the claimant's "military work activities with those in civilian occupations and assess the

13   reasonable worth of the work."  *Id*.  This requires the ALJ to objectively evaluate the claimant's

14   work activity "and not the service person's duty status, or whether or not a formal therapy

15   program is involved."  *Id*.  Nevertheless, evidence that the claimant is on limited duty or

16   participating in a therapy program "necessarily suggests that special conditions may exist."  *Id*.

17           Here, the ALJ's decision demonstrates a failure to properly evaluate plaintiff's military

18   work activity under the requirements of SSR 84-24, which undoubtably applies to plaintiff's case.

19   Plaintiff enlisted in the United States Army in January 1997.  AR 1012.  Here, the onset of

20   alleged disability was a traumatic injury.  On the date in question plaintiff was serving in

21   Afghanistan and in a Humvee that drove over an IED that exploded.  The resulting explosion

22   threw plaintiff forty feet from the vehicle.  Plaintiff sustained a traumatic brain injury ("TBI"),

23   multiple fractures in his lumbar spine, and a fractured left navicular bone, among other injuries.

24   *Id*. at 1367-68.  In June 2009, after more than a year of treatment and rehabilitation, plaintiff was

25   placed in a position as a Senior Medical Sergeant—a position he retained until his medical

26   discharge in May 2010.  *Id*. at 340, 1012.

27           As noted above, the ALJ concluded that plaintiff engaged in substantial gainful activity

28   from the date of his injury from the IED through May 28, 2010.  In reaching this finding, the ALJ

8

1    indicated that plaintiff's Work Activity Report shows he worked light duty from June 2009 until

2    his discharge from the Army. *Id*. at 1390. In rejecting plaintiff's description of this activity, the

3    ALJ commented that the record did not include "military documentation of any light

4    accommodated duty or wounded warrior type assignment to substantiate" plaintiff's claim.[4] *Id*.

5        The ALJ's reasoning disregards the special considerations required by SSR 84-24 for

6    evaluating work activity of severely impaired military service members. *See Orn v. Astrue*, 495

7    F.3d 625, 636 (9th Cir. 2007) (Social Security Rulings are binding on the ALJ, and remand is

8    warranted for failure to comport with a Social Security Ruling). The ALJ provides no

9    explanation for his conclusion that plaintiff engaged in substantial gainful activity from

10   November 2007 through June 2009, the date plaintiff was placed in the position as Senior

11   Medical Sergeant. The ALJ did not find that plaintiff engaged in any work activity prior to

12   commencing that position, and there is nothing in the record indicating that plaintiff worked in

13   any capacity during this period. Instead, plaintiff's medical records reflect he was not engaged in

14   any work activity prior to June 2009. AR 1944 (noting Army gave plaintiff "8 months off

15   because he broke his back and went to rehab for 2 years until Medical board out.").

16       The ALJ also failed to properly evaluate plaintiff's work activity during the period he was

17   classified as a Senior Medical Sergeant (June 2009 through May 2010). The ALJ was required to

18   determine whether work activity during that period constituted substantial gainful activity under

19   the rubric described in SSR 84-24. The ALJ made no attempt to ascertain the work activities

20   plaintiff performed as a Senior Medical Sergeant. Instead, the ALJ rejected plaintiff's

21   representation that it was a light duty assignment because that description was not substantiated

22   by other evidence. AR 1390. SSR 84-24 specifically states that the "service person is the

23   primary source of information about the activities involved in his or her particular work therapy

24

---

25       [4] Curiously, the ALJ also noted that the record did not include treatment records for the
     period from date of the injury through plaintiff's military discharge. AR 1390. It is not clear why

26   the administrative record does not include medical records from that period. Indeed, more recent
     treatment records include general descriptions of the significant medical treatment plaintiff

27   underwent after sustaining his combat related injuries. *See, e.g.*, AR 421, 1367-68. In any event,
     it is not clear how plaintiff's medical records (or absence of records) were weighed by the ALJ in

28   assessing plaintiff's work activity.

1    program."  It further provides that if "the service person's description of duties is equivocal or

2    apparently inaccurate, or if it shows activities not readily correlated to jobs in the civilian

3    community, corroborative information is necessary.  Military personnel having supervisory and

4    administrative knowledge of the details and status of the limited work *should be contacted.*"  SSR

5    84-24 (emphasis added).  Thus, the ALJ was not free to summarily reject plaintiff's description of

6    his work activities due to a lack of corroborating evidence.  And to the extent plaintiff's

7    description was inadequate to allow proper evaluation of the work activities, the ALJ was

8    required to further develop the record.  SSR 84-24; *see also Tonapetyan v. Halter*, 242 F.3d 1144,

9    1150 (9th Cir. 2001) (the ALJ's duty to develop the record is triggered "when there is ambiguous

10   evidence or when the record is inadequate to allow for proper evaluation of the evidence.").

11           Accordingly, the ALJ erred in finding that plaintiff engaged in substantial gainful activity

12   from November 7, 2007 through May 28, 2010.[5]

13           B.      Plaintiff's Subjective Complaints

14           Plaintiff also contends that the ALJ erred by failing to provide clear and convincing

15   reasons for rejecting his testimony concerning his migraine headaches.  ECF No. 13 at 29-36.

16                   1.      Relevant Legal Standards

17           In evaluating whether subjective complaints are credible, the ALJ should first consider

18   objective medical evidence and then consider other factors.  *Bunnell v. Sullivan*, 947 F.2d 341,

19   344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of impairment, the ALJ may

20   then consider the nature of the symptoms alleged, including aggravating factors, medication,

21   treatment, and functional restrictions.  *See id.* at 345-347.  The ALJ also may consider: (1) the

22   applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

23   testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

24   ─────────────────────

25           [5]  In his reply brief, plaintiff argues that under the doctrine of *res judicata*, the ALJ was
     precluded from finding he engaged in substantial gainful activity during the relevant period based

26   on ALJ Belli's 2013 or 2015 decisions.  ECF No. 22 at 5.  In those decisions, ALJ Belli
     concluded, without explanation, that plaintiff had not engaged in substantial gainful activity at

27   any time since the alleged onset date.  AR 13, 153.  But neither decision has any preclusive effect
     since both were vacated.  *See Haseltine v. Astrue*, 2010 WL 2573959, at *3 (N.D. Cal. June 24,

28   2010) (rejecting argument that an ALJ's prior, vacated decision was barred by *res judicata*).

1    prescribed course of treatment, and (3) the applicant's daily activities.  *Smolen v. Chater*, 80 F.3d

2    1273, 1284 (9th Cir. 1996).  Work records, physician and third-party testimony about nature,

3    severity and effect of symptoms, and inconsistencies between testimony and conduct also may be

4    relevant.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  "Without affirmative

5    evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the

6    claimant's testimony must be clear and convincing."  *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d

7    595, 599 (9th Cir. 1999).  Finally, while the ALJ should begin by considering the objective

8    medical evidence, he "may not reject a claimant's subjective complaints based solely on a lack of

9    objective medical evidence to fully corroborate the alleged severity of pain."  *Bunnell*, 947 F.2d

10   at 345.

11              2.       Discussion

12         Plaintiff testified that the impairment primarily responsible for his inability to work is his

13   migraine headaches.  He reported experiencing frequent migraines, which he treats with Imitrex

14   injections.  AR 82-83, 1431.  He explained that Imitrex helps shorten the duration and severity of

15   his migraines, but only if administered before any significant onset occurs.  *Id*. at 83.  He further

16   testified that approximately one to two times a week, he has a headache that is not relieved by

17   Imitrex.  He explained that when this occurs, he takes a hot shower in a dark room and then goes

18   to bed.  AR 83, 1437.  He further stated that the headaches that are not alleviated by Imitrex last

19   most of the day and preclude him from performing almost all activities.  *Id*. at 83, 321, 1437.

20         The ALJ provided multiple reasons for rejecting plaintiff's testimony regarding the

21   severity of his migraine headaches, none of which were legally sufficient.  First, the ALJ

22   concluded that plaintiff's allegations were inconsistent with the frequency and form of treatment

23   he received.  AR 1395.  In that regard, the ALJ observed that "[t]here are no emergency room

24   visits for this condition while treatment records from family practitioner Dr. Randall Meredith,

25   providing pain management and medications from March 2012 through October 2017 include

26   only one mention of having migraines."[6]  *Id*.  The ALJ also observed that a December 2016

27   _____

28         [6]  Although true that plaintiff did not seek treatment for his migraines at an emergency
     room, Dr. Meredith's treatment records include at least a few references to plaintiff's migraines.

11

1    mental health record indicated plaintiff experienced only one severe migraine every month.  *Id.*;

2    *see* AR 1930.

3         The ALJ's observations are selective and paint a misleading picture of the record—which

4    spans more than 2100 pages—and invites the inference that plaintiff's complaints of debilitating

5    headaches find little support from the voluminous medical records.  The record, however, is

6    replete with treatment notes substantiating plaintiff's complaints of experiencing one to two

7    severe migraine headaches each week.  *See, e.g.,* AR 519-20, 1368 (8/6/2010, "He has almost

8    daily headaches some of which are migrainous.  Sumatriptan (Imitrex) is effective if he catches

9    the migraine early however 1 to 3 times weekly he wakes with a migraine and sumatriptan is not

10    effective."); AR 494 (8/26/2010, 1-2 migraine a week); 491 (9/8/2010, headaches less frequent);

11    421, 487 (9/30/2010, tried various medication for migraines); 466 (8/15/11, wakes up with

12    migraine 1-4 times a month, so sumatriptan is ineffective); 461 (1/24/2012, migraines once a

13    week); 456 (2/2/2012, prescribed Topamax for migraine headaches); 648 (4/12/2012, migraine

14    headaches since November 2007); 739 (10/17/2012, reflecting migraine once a week and that

15    "Sumatriptan is effective if he catches the headache early."); 766 (10/31/2012, "Having migraines

16    about three times weekly with nausea and vomiting."); 826 (11/02/2012, "difficulties with

17    headaches."); 943-44 (12/20/2012, severe migraine headaches two times a week, which last all

18    day); 1143 (1/17/2012, headaches "frequently present and disrupt activities."); 1133 (2/7/2013,

19    "headaches at least 1-3 times a week that often involve photophobia and . . . can last all day.

20    When the headaches are particularly bad, [plaintiff] has vomiting and will turn out the lights and

21    sit in a hot shower in order to relieve some pain."); 1123 (6/26/13, requesting Botox for

22    headaches); 933 (6/27/2013, recent prescription of nortriptyline discontinued because it increased

23    headaches); 1116 (3/13/2014, impairments include migraine headaches); 1758 (6/2/16, "He has

24    migraine headaches and occasionally uses sumatriptan); 1929 (12/13/2016, physician disability

25    questionnaire reflecting plaintiff has had migraines headaches since 2007, and his symptoms

26    include pulsating and throbbing head pain, nausea, vomiting, etc.); 1943 (12/13/2016, frequency

27

28    *See* AR 648, 988, 1758.

1   of headaches reduced to twice a week since September 2015); 1915 (1/19/2017, migraines two

2   times a week).

3           Contrary to the ALJ's finding, plaintiff's testimony regarding the severity and frequency

4   of his headaches is strongly corroborated by his medical records.  Furthermore, the mere fact that

5   plaintiff did not seek treatment at an emergency room does not undermine his allegations.  *Baker*

6   *v. Colvin*, 2016 WL 5746356, at \*12 (D. Idaho Sept. 29, 2016) (holding that lack of emergency

7   room treatment does not reflect a failure to seek treatment for an impairment).

8           The ALJ also concluded that plaintiff was not credible because his migraine symptoms

9   were improved or relieved by medication.  AR 1395; *see Warre v. Comm'r Soc. Sec. Admin.*, 439

10  F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication

11  are not disabling for the purpose of determining eligibility for [disability] benefits.").  To support

12  that finding, the ALJ cited to only one treatment record from July 2012.  AR 1395.  The record

13  states that Imitrex was effective if taken at the first sign of a migraine and that plaintiff's

14  migraines were "less frequent, about once a week now."  *Id*. at 461, 1395.  This single treatment

15  note does not establish that plaintiff's migraines are well controlled with medication.  As noted

16  above, plaintiff specifically stated that his medication was effective only if he is able to

17  administer it at the first sign of a migraine.  But he further explained that he still has one to two

18  headaches a week that are not responsive to medication, including headaches that are already

19  present when he awakes.  *See, e.g.,* AR 321.  The July 2012 treatment note cited by the ALJ fully

20  supports this testimony.  Although not acknowledged by the ALJ, the July 2012 treatment note

21  also states that plaintiff sometimes wakes up with a migraine, rendering Imitrex ineffective.  *Id*. at

22  461.

23          But more problematic is the ALJ's failure to discuss the numerous treatment notes that

24  fully support plaintiff's testimony regarding the debilitating effects of these headaches.  A single

25  treatment note reflecting some level in improvement does not justify the ALJ's failure to

26  acknowledge the numerous medical records showing ongoing issues with severe migraine

27  headaches.  *See, e.g.,* AR 461, 466, 494, 766, 1133.  *See Scott v. Astrue*, 647 F.3d 734, 739-40

28  /////

1    (7th Cir. 2011) (holding that an ALJ is not permitted to "'cherry-pick' from . . . mixed results to

2    support a denial of benefits").

3           Lastly, the ALJ concluded that plaintiff's testimony was inconsistent with his daily

4    activities, which included going to the shooting range, hunting, completing a Bachelor's degree,

5    commencing work on a Master's degree, and studying to become a physician's assistant.

6    Plaintiff's testimony reflects that he went hunting and would go to the shooting range with his

7    brother-in-law.  But he specifically stated that he had not been hunting since 2014, and that he

8    only went to the shooting range "once in a while."  AR 1433, 1455.  Furthermore, there is

9    nothing suggesting that plaintiff engaged in these activities on days he was experiencing a

10   migraine headache.  Nor does the ALJ identify any evidence in the record establishing that

11   plaintiff's migraines are triggered by loud noises.  Accordingly, plaintiff's ability to occasionally

12   perform these activities does not demonstrate an ability to work on a full-time basis.  *See Trevizo*

13   *v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) ("[M]any home activities are not easily

14   transferable to what may be the more grueling environment of the workplace, where it might be

15   impossible to periodically rest or take medication."); *cf. Garrison v. Colvin*, 759 F.3d 995, 1016

16   (9th Cir. 2014) ("We have repeatedly warned that ALJs must be especially cautious in concluding

17   that daily activities are inconsistent with testimony about pain, because impairments that would

18   unquestionably preclude work and all the pressures of a workplace environment will often be

19   consistent with doing more than merely resting in bed all day.").

20          Plaintiff's ability to complete his Bachelor's degree is also not a clear and convincing

21   reasons for rejecting his testimony.  Plaintiff started taking college courses prior to 1995.  AR

22   349.  At the 2013 hearing, he testified that he already completed the equivalent of three years of

23   college course work.  *Id*. at 57.  He further testified that he was enrolled in an online university,

24   and that he only took one course at a time.  *Id*. at 57-58.  In October 2014, plaintiff informed his

25   treating physician that he completed his Bachelor's degree.  *Id*. at 1108.  Thus, plaintiff's quest to

26   obtain his college degree spanned nearly two decades.  Moreover, treatment records reflect that

27   completing his school work on a part-time basis was not an easy feat.  *See, e.g.*, *id*. at 1143

28   (1/17/2013 treatment record noting plaintiff was "unable to keep up grades in online college

14

1  class" due to medical impairments, including migraine headaches).  The circumstances under

2  which plaintiff completed his degree are not inconsistent with his claims of frequent debilitating

3  headaches.  Nor does his ability to complete his degree on a part-time basis over many years

4  suggest an ability to engage in full-time work on a sustained basis.  Rather, the record indicates

5  the contrary.

6  Finally, the ALJ erred in rejecting plaintiff's testimony based on a few treatment notes

7  documenting plaintiff's ambition to pursue further education.  AR 1395; *see* AR 441 (7/3/2013,

8  plaintiff reported he was considering becoming a physician assistant); 1774 (5/28/2015, plaintiff

9  was taking courses and "on his way to getting a career and counseling."); 1771 (7/30/15, plaintiff

10  "is in a masters program.").  Although the record shows that plaintiff was enrolled in an academic

11  program sometime before May 2015, the record is devoid of any details reflecting plaintiff's

12  course work.  There is nothing suggesting that plaintiff is enrolled in a full-time master's

13  program.  Furthermore, plaintiff testified at the February 2018 that he was not currently enrolled

14  in an education program.  *Id*. at 1427.  Thus, it appears plaintiff was unsuccessful in his effort to

15  obtain a master's degree.[7]

16  Accordingly, the ALJ erred by failing to provide clear and convincing reasons for

17  rejecting plaintiff's testimony.

18  _____

19  [7]  The ALJ's decision also observed that a September 2016 MRI of plaintiff's brain

20  showed normal findings.  To the extent the ALJ relied on the MRI to discount plaintiff's
   subjective complaints, he erred.  As one court has observed:

21  > The cause [of a migraine] is unknown and the pathophysiology is not
   > fully understood.... The mechanism for migraines is not well defined,

22  > but several triggers are recognized [, including] insomnia, barometric
   > pressure change, and hunger.... Symptoms usually follow a pattern in

23  > each patient.... The patient may have attacks daily or only once every
   > several months. Diagnosis is based on the symptom patterns when

24  > there is no evidence of intracranial pathologic changes.... No
   > diagnostic tests are useful, except to exclude other causes. Treatment

25  > depends on the frequency of attacks and the presence of comorbid
   > illness. In general, treatment can be classified as prophylactic,

26  > abortive, or analgesic.

27  *Groff v. Comm'r Soc. Sec.*, 2008 WL 4104689, at *8 (N.D.N.Y. Sept. 3, 2008) (quoting *The
   Merck Manual* 1376 (17th ed. 1999)).  Accordingly, a normal MRI does not suggest plaintiff is

28  exaggerating the severity of his symptoms.

1        C.       Remand for Further Proceedings

2              Plaintiff argues that the appropriate remedy is remanding the case for immediate payment

3      of benefits.  ECF No. 13 at 39-42.  He claims that the administrative record is well-developed and

4      that the ALJ should not be afforded another opportunity to correct deficiencies.  *Id.*

5              "A district court may reverse the decision of the Commissioner of Social Security, with or

6      without remanding the cause for a rehearing, but the proper course, except in rare circumstances,

7      is to remand to the agency for additional investigation or explanation."  *Dominguez v. Colvin*, 808

8      F.3d 403, 407 (9th Cir. 2015) (internal quotes and citations omitted).  Where the ALJ improperly

9      rejects evidence establishing disability, the district court may remand the matter for immediate

10     payment of benefits under the credit-as-true- rule.  *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th

11     Cir. 2004).  A case may be remanded under the "credit-as-true" rule for an award of benefits

12     where:

13                     (1) the record has been fully developed and further administrative
                       proceedings would serve no useful purpose; (2) the ALJ has failed to
14                     provide legally sufficient reasons for rejecting evidence, whether
                       claimant testimony or medical opinion; and (3) if the improperly
15                     discredited evidence were credited as true, the ALJ would be
                       required to find the claimant disabled on remand.
16

17     *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).  However, even where all three

18     requirements are satisfied, the court retains "flexibility" in determining the appropriate remedy.

19     *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014).  "Unless the district court concludes that

20     further administrative proceedings would serve no useful purpose, it may not remand with a

21     direction to provide benefits."  *Dominguez*, 808 F.3d at 407.

22             The court is cognizant that plaintiff's application was filed more than eight years ago.

23     Since that time, two ALJs have issued a total of three adverse decisions, each deficient in some

24     respect.  Furthermore, plaintiff's testimony demonstrates that he is disabled under the Act, at least

25     as of May 29, 2010.  At the 2018 hearing, the vocational expert testified that "on average missing

26     one day per month is acceptable in the majority of the employers in our workforce."  AR 1460.

27     The ALJ subsequently asked the vocational expert if a person missing two days a month would be

28     able to perform any work.  *Id.* at 1462.  In response, the vocational expert stated missing two days

1   a month "would be beyond what is tolerated in the majority of employers in the workforce." *Id*.

2   Considering this evidence in conjunction with plaintiff's testimony, which the court credits as

3   true, the evidence of record establishes plaintiff is disabled.  The problem is how to determine the

4   precise date that his eligibility for benefits begins.

5         The date of plaintiff's traumatic brain injury is clear.  However, if plaintiff did in fact

6   engage in substantial gainful activity from November 7, 2007 through May 28, 2010—a doubtful

7   scenario in light of the medical evidence—he would not be entitled to benefits for that period.

8   Unfortunately, the current record does not contain sufficient information regarding plaintiff's

9   prior work activity to permit a proper evaluation under SSR 84-24.  Accordingly, the matter must

10   be remanded for further proceedings to allow for proper consideration of whether plaintiff

11   engaged in substantial gainful activity from the alleged onset date through May 28, 2010.

12   IV.   <u>Conclusion</u>

13         Accordingly, it is hereby ORDERED that:

14       1.  Plaintiff's motion for summary judgment is granted;

15       2.  The Commissioner's cross-motion for summary judgment is denied;

16       3.  The matter is remanded for further proceedings consistent with this order; and

17       4.  The Clerk is directed to enter judgment in plaintiff's favor and close the case.

18   DATED:  May 27, 2020.

19

20         EDMUND F. BRENNAN
          UNITED STATES MAGISTRATE JUDGE